## THOMAS LELAND AND OTHERS V. DAVID WILKINSON.

A paper certified by the secretary of state of Rhode Island, and by the governor, under the seal of the state, stating that certain laws were passed by the legislature of that state, and that certain matters were cognizable by the general assembly of Rhode Island, and of the practice of the assembly of Rhode Island in cases of a particular description; is not evidence on the argument of a cause before this court. Usage and custom should be proved in the circuit court on the trial of the case in which it may be referred to; and evidence of the same is not admissible in this court, if not found in the record.

A certificate from the secretary of state of the state of Rhode Island, also certified by the governor under the seal of the state, was offered to prove that certain proceedings have been had at different times in the legislature of Rhode Island on private petitions, relative to the administration and sale of the estates of deceased persons for the payment of their debts; and that there have been certain usages and proceedings in the legislature of that state in regard to the same. By the court: the public laws of a state may, without question, be read in this court, and the exercise of any authority which they contain may be derived historically from them. But private laws, and special proceedings of this character, are governed by a different rule. They are matters of fact, to be proved as such in the ordinary manner. This court cannot go into an inquiry as to the existence of such facts upon a writ of error, if they are not found in the record.

THIS case came before the court on a certificate of division in opinion of the judges of the circuit court of the United States for the district of Rhode Island.

The same cause was before the court on a writ of error at January term 1829. 2 Peters, 267. The case was again tried in the circuit court of Rhode Island at June term 1830; and the points on which the judges of that court were divided were certified to this court.

After the case had been argued by Mr Dutton for the plaintiff, with whom also was Mr Webster; Mr Whipple for the defendant, with whom also was Mr Wirt, proposed to read, as evidence of the law of Rhode Island upon the probate of wills and granting of administration, and of the other matters therein stated, the following certificate:

"State of Rhode Island and Providence Plantations. Secretary's office, January 7, 1832. I certify, that from an examination of the records of said state it appears, that on the 1st day of March 1663, an act was passed entitled, "an act for

the probate of wills and granting of administrations." That in and by said act the probate of wills and granting administrations was vested in the town councils of the respective towns: that an appeal lay to the governor and council as supreme ordinary or judge of probates, who continued to exercise such jurisdiction until June 1802, when all appeals then pending, with the jurisdiction thereof, were transferred to the supreme judicial court, by whom it is now exercised.

I further certify, that from the year 1666 until June 1729, the general assembly took cognizance of and tried appeals from the general court of trials; which court was composed of the governor, deputy governor, and assistants. That at June session 1729, an act was passed establishing a superior court of judicature, consisting of the governor, deputy governor, and assistants. That thereby an appeal in personal actions was allowed from said superior court to the general assembly. That the general assembly continued to try appeals therefrom until June 1741, when a court of equity was established and authorised to hear appeals in personal actions from the superior court of judicature agreeable to law and equity, in as full and extensive manner as the general assembly had been accustomed to do. That in February 1743, an act was passed abolishing said court of equity, and authorising said superior court to *review* causes by them decided.

I further certify, that the general assembly of the colony, and also of the state, have been and now are accustomed to exercise a revisory power in granting new trials, upon petition therefor.

That the assembly have and now do license the sales of real estate for the payment of debts of persons deceased, upon petition of the executor or administrator; and also license the sale of the real estate of minors upon petition of the guardi-

Witness, HENRY BOWEN, Secretary.

By his excellency, Lemuel H. Arnold, governor, captain-general and commander-in-chief of the state of Rhode Island and Providence Plantations. Be it known that the name "Henry Bowen," to the aforesaid written attestation subscribed, is the proper hand writing of Henry Bowen, Esquire, who, at the time of subscribing the same, was secretary of the state aforesaid, duly elected and qualified according to law:

[Leland and others v. Wilkinson.]

wherefore, unto his said attestation full faith and credit are to be rendered.

In testimony whereof I have hereunto set my hand and caused the seal of said state to be affixed, at Providence, this seventh day of January, in the year of our Lord one thousand eight hundred and thirty-two, and of independence the fifty-sixth.                         LEMUEL H. ARNOLD.

By his excellency's command.  HENRY BOWEN, Secr'y."

Mr Webster objected to the introduction of this paper in evidence.

Mr Justice Baldwin.   It is evidence of local law.

Mr Justice Thompson.   The paper is evidence of the dates of the laws, but it is otherwise inadmissible.   If it is offered as evidence of a custom in Rhode Island, it should have been laid before the jury, by whom the question whether such was the custom should have been decided.   The facts stated in the certificate cannot be inquired into by this court in this form.

Mr Justice Story.   It is incompetent evidence.   The laws must be produced to show what they are, and their dates. They may be certified by the officer.   If the usage of the state of Rhode Island is to be inquired into, it should be established in the court below.

Mr Justice Duvall and Mr Justice M'Lean concurred with Mr Justice Story.

Mr Chief Justice Marshall considered the certificate evidence that there were such laws as those stated in it; but the laws should be produced.   He would have been willing that the paper should be read, unless objected to; but being objected to, it was not evidence.

Mr Whipple then offered in evidence, to show the course of legislation in Rhode Island in particular cases, a copy of the proceedings of the legislature upon petitions presented for relief in the cases stated in them.   The copy of the proceedings

in each case was certified by Henry Bowen, secretary of state of the state of Rhode Island, and to the whole was subjoined the certificate of Lemuel Arnold, " governor, captain-general and commander-in-chief of the state of Rhode Island and Providence Plantations," under the seal of the state, that " Henry Bowen was secretary of the state," duly elected and qualified according to law.

The paper thus certified and offered in evidence, contained a copy of a petition to the legislature of Rhode Island, dated New York, 20th November 1784, signed by " Grace Babcock, of Philipsborough in the state of New York, widow, relict of Luke Babcock, clerk." The petitioner prayed the legislature to authorise her to dispose of a mortgage held by her husband at the time of his decease, on one fourth part of a lot and dwelling house in New York. Luke Babcock left three minor children. On the 3d March 1785, the prayer of the petition was granted; and by resolution it was declared that a deed of the mortgaged premises should " convey to the purchaser all the right and title of said Luke Babcock, at the time of his decease, in and unto the said premises."

2. Also the petition of John Read of the county of Bristol, in the state of Massachusetts, presented on the last Monday in June 1785. John Read was the executor of William Read of the same county and state, deceased.

The petition stated, that the property of the deceased had, on the report of a commissioner, been adjudged capable of paying no more than twelve shillings and sixpence in the pound. That an attachment had been issued against the real estate of the deceased in Newport, and against his heirs and devisees by one of the creditors, for money alleged to be due to him, and a judgment obtained thereon. The petition prayed that the action so brought might be stayed, the demand of the plaintiff should be " examined; and for such sum as should be found due to him, he may be admitted to receive his proportion with the other creditors of the said estate;" and that such part of the real estate of William Read, situate in the county of Newport, should be sold, as should be sufficient to pay his debts, under the direction, and with the approbation of the judge of probate for the city of Newport, or the town council in which the estate laid; and that the deed or deeds for the

[Leland and others v. Wilkinson.]

same, should convey to the purchaser a good and indefeasible estate of inheritance in fee simple.     The legislature, by a resolution passed July 1, 1785, granted the prayer of the petition; and also " resolved, with the consent of the attaching creditor, that the proceeding on his aforesaid action be stayed."

3. Also the petition of Lucy Jenks, "widow and relict of Gideon Jenks of Brookfield, in the county of Worcester, Massachusetts, deceased, and administratrix to the said deceased's estate."     The petition stated that " there were debts against the estate of the deceased, amounting to two hundred and twenty-eight pounds sixteen shillings and sixpence, and that selling the personal estate to discharge them, would greatly distress the petitioner and her children, being eleven in number, all in their minority excepting one daughter."     The petition prayed leave to dispose of all the real estate of the deceased in North Providence, in the county of Providence, to be appropriated towards the payment of the said debts, as recommended by the judge of probate for the county of Worcester aforesaid.     On the 8th September 1790, the legislature voted " that the petition be received, and the prayer thereof be granted."

The proceedings of the legislature of Rhode Island, in six other cases, on the petitions of individuals in matters of a private nature, were also certified in the same manner.

Mr Webster, for the plaintiffs, objected to the admission of the papers as evidence.     They were private acts; and if they are to be given in evidence, it would be necessary and proper for the plaintiffs to have an opportunity to examine into the facts of the cases to which the laws refer.

Mr Wirt, for the defendant, contended, that the evidence was legal.     There is no written constitution in Rhode Island, and the proceedings now offered are adduced to show the law and practice of the state by her highest tribunal, in the full and undoubted exercise of the powers entrusted to it.

The judges having severally expressed their opinion, Mr Chief Justice MARSHALL said, the evidence objected to is understood to be offered to prove that certain proceedings have

been had at different times in the legislature of Rhode Island, on private petitions of a similar nature with that before the court; and that there have been certain usages and proceedings in the legislature of Rhode Island, in regard to the administration and sale of the estates of deceased persons for their debts, which will establish, that it has for a long period by usage, and rightfully, exercised the authority contended for by the defendant. The public laws of a state may without question be read in this court; and the exercise of any authority which they contain, may be deduced historically from them: but private laws, and special proceedings of the character spoken of, are governed by a different rule. They are matters of fact, to be proved as such in the ordinary manner. This court cannot go into an inquiry as to the existence of such facts upon a writ of error, if they are not found on the record. The evidence, if not objected to, might have been heard; but since it is controverted, the matter of fact must be ascertained in the circuit court.

Mr Justice BALDWIN dissented.

[Upon this decision, the parties consented to remand the cause to the circuit court for further inquiry into the facts.]